United States District Court
Southern District of Texas
**ENTERED**
July 30, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| LANDMARK AMERICAN INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. 2:19-CV-00006 |
| PORT ROYAL BY THE SEA CONDOMINIUM OWNERS ASSOCIATION, INC., | § § § § § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

This case is, in short, an insurance coverage dispute between Plaintiff/Counter-Defendants Landmark American Insurance Company, Engle Martin & Associates, and David A. Alvarez (collectively, "Landmark") and Defendant/Counter-Plaintiff Port Royal by the Sea Condominium Owners Association, Inc. ("Port Royal"). The case arose in the aftermath of damage caused to Port Royal's property during Hurricane Harvey. Currently pending are two separate motions regarding the admissibility of expert witness testimony. The first is Port Royal's "Motion to Exclude the Testimony of Brett Lochridge" (D.E. 144), while the second is Landmark's "Motion to Strike and Exclude the Expert Report, Opinions & Testimony of Rocco Calaci" (D.E. 150). Both motions have been fully-briefed and were addressed at a July 28, 2021, motion hearing. (D.E. 169, 175, 180, 181). For the reasons discussed further below, it is recommended that the motions (D.E. 144, 150) be **DENIED**.

## I. APPLICABLE LAW

An expert witness may offer opinions as an expert if: (a) their scientific, technical, or other specialized knowledge will help the trier of fact understand the evidence or determine a fact issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Civ. P. 702. Because there is an assumption that an expert's opinion will have a reliable basis in the knowledge and experience of his discipline, an expert witness is allowed to offer opinions that are not based on firsthand knowledge or observation. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993). Thus, courts must determine whether the expert's reasoning or methodology are valid and whether that reasoning and methodology can properly be applied to the facts at issue. *Id.* at 592-93.

This analysis is intended to be flexible and is to be based only on the principles and methodology used by the expert, not on the conclusions that they generate. *Id.* at 594-95. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* at 596. Although the *Daubert* test applies specifically to "scientific" knowledge, the Supreme Court has extended it to all types of specialized knowledge that an expert could testify to. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147-48 (1999).

## II. DISCUSSION

    *a.  Port Royal's Motion to Exclude Lochridge*

In the motion, Port Royal contends that Lochridge's testimony is both unreliable and irrelevant, thus failing both steps of the *Daubert* framework. (D.E. 144 at 10). As to reliability, Port Royal argues that: (1) Lochridge did not review all relevant documentation; (2) he did not conduct any tests; (3) his report includes no methodology or standard to support his opinions; (4) he did not exercise due care to verify his findings because he failed to speak with any of the other experts regarding their findings, despite relying on them to reach his own conclusions; and (5) his opinions are conclusory and not based on any evidence. (*Id.* at 10-22). As to relevance, Port Royal briefly argues that some of Lochridge's opinions are irrelevant because they are based on an assumption unsupported by the facts of the case. (*Id.* at 16-18). Port Royal attached the transcript of Lochridge's deposition. (D.E. 144-1).

Landmark responds that Lochridge and his associates inspected every unit in the buildings over the course of three days, and Lochridge inspected 60% of the units himself. (D.E. 175 at 8). Landmark contends that all units were photographed and documented, and that Lochridge reviewed all of this information, along with outside documentation including estimates, invoices, receipts, expert reports, and photographs from both before and after Hurricane Harvey. (*Id.* at 8-9). Landmark argues that Lochridge could not prepare independent estimates for two of the buildings because they had already undergone significant repair when he visited the property, but he did prepare his own estimate for the one building that had not been repaired. (*Id.* at 9-10). Ultimately, Landmark contends that Port Royal's criticisms of Lochridge are unrelated to whether his opinions are reliable. (*Id.* at 11-13). Landmark submitted an affidavit from Lochridge, in which he explains his

3

credentials, his inspection of the property, and how he formulated his report. (D.E. 175-1 at 1-5). Lochridge's initial and second reports are also in the record. (D.E. 79-2; D.E. 141 at 18-148).

Port Royal replies that: (1) Lochridge's opinions are not reliable and not based on scientific data because he only briefly visited the property, did not review all the necessary documentation, and did not conduct tests; (2) Lochridge's associates were unqualified to inspect the property and performed more than merely administrative functions; and (3) Landmark did not dispute that Lochridge failed to exercise due care. (D.E. 181 at 2-6).

Here, Port Royal does not question Lochridge's qualifications as an expert, but rather the reliability of his methodology. Ultimately, Port Royal has raised issues primarily related to the weight that the factfinder should give to Lochridge's opinions, not to their admissibility. Lochridge is utilizing his specialized knowledge in the construction business as the basis of his expert testimony. He personally inspected the property and reviewed other reports, among other steps, before formulating his own opinions and conclusions in his expert report. (D.E. 175-1 at 1-5). That he did not personally inspect *every* unit or review *every* outside report and document is not sufficient to show that his entire opinion should be excluded as unreliable or irrelevant. To the extent that Port Royal believes that Lochridge's inspections were lacking, or that his associates were unqualified, or that he failed to obtain all the necessary information before reaching his conclusions, those are deficiencies that go to his credibility and can be shown through cross-examination of Lochridge and presentation of their own evidence. *See Daubert*, 509 U.S. at 596 (stating

that cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof remain the appropriate means of attacking shaky but admissible evidence).

    *b.    Landmark's Motion to Strike and Exclude Calaci*

Landmark seeks to strike and exclude the expert report, opinions, and testimony of Port Royal's meteorological expert, Rocco Calaci. (D.E. 150 at 6). Specifically, Landmark contends that Calaci relied on unreliable data from a weather station[1] over 40 miles from Port Royal's property in reaching his primary conclusions regarding wind speeds experienced at the property. (*Id.* at 1-6).

Port Royal initially recognizes that Calaci's original report relied on data that he now recognizes to have been irrelevant to determining the wind speed at Port Royal's property during the hurricane. (D.E. 169 at 7-10). However, Port Royal argues that Calaci has filed a revised report based on different data that reaches the same final conclusion regarding the maximum wind gusts experienced at the property. (*Id.* at 10). Port Royal asserts that Landmark's argument goes to the weight of the evidence, not its admissibility. (*Id.* at 11). Additionally, Port Royal submitted an affidavit from Calaci, in which he states that he has revised his report to remove any reliance on the bad data in formulating his opinions. (D.E. 170-1 at 4-5, 8). Calaci included a copy of his revised report, dated July 19, 2021, which still includes references to the WRCC data, but also cites other sources for his conclusions regarding the maximum wind gusts and wind gust factor. (*Id.* at 42-66).

---

[1] The source of the data is referred to as the Western Regional Climate Center, or WRCC.

Landmark responds that, despite what he says, Calaci still relies on the unreliable data and, regardless, revising his report in July 2021, almost six months after his deposition and after every relevant deadline, is insufficient to avoid being stricken and excluded. (D.E. 180 at 1-5).

Here, Landmark does not question Calaci's qualifications as an expert, but rather the reliability of his methodology. Ultimately, Landmark has raised issues primarily related to the weight that the factfinder should give to Calaci's opinions, not to their admissibility. It is undisputed that Calaci's initial report relied on data that could not reliably represent the weather data at Port Royal's property during the hurricane. However, Calaci has revised that report and indicates that he no longer relies on that data to reach his conclusions. (D.E. 170-1 at 4-5, 8). Moreover, Calaci's revised report does indicate that he looked at and relies on other sources of information, at least in addition to the WRCC data and possibly in exclusion of it. (*See* D.E. 170-1 at 43-44, 65). To the extent that Landmark believes Calaci's conclusions are still based on slim evidence or tainted by inaccurate data, those are deficiencies that can be shown through cross-examination of Calaci and presentation of their own evidence. *See Daubert*, 509 U.S. at 596 (stating that cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof remain the appropriate means of attacking shaky but admissible evidence). Landmark has not shown that Calaci's methodology is so flawed, as a whole, to be considered unreliable, or that this is an issue more connected to his methodology than to the conclusions he reaches. *Id.* at 594-95. Finally, as to Landmark's argument that Calaci's attempt to revise the report was too little, too late, they have not shown that they will suffer

6

any prejudice from this late revision. *See Barrett v. Atlantic Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996) (discussing the factors courts consider when determining if exclusion of an expert would be appropriate). Calaci did not change his ultimate opinions regarding wind gust speed in the revised report. (D.E. 170-1 at 40, 65).

### III. RECOMMENDATION

Accordingly, it is recommended that the motions (D.E. 144, 150) be **DENIED**.

Respectfully submitted on July 30, 2021.

_____
Julie K. Hampton
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).