United States District Court
Southern District of Texas
**ENTERED**
August 05, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

LANDMARK AMERICAN INSURANCE §
COMPANY, §
　§
　　　Plaintiff, §
　§
VS. § CIVIL ACTION NO. 2:19-CV-00006
　§
PORT ROYAL BY THE SEA §
CONDOMINIUM OWNERS §
ASSOCIATION, INC., §
　§
　　　Defendant. §

**ORDER ADOPTING IN PART AND REJECTING IN PART**
**MEMORANDUM AND RECOMMENDATION**

This dispute arises out of an insurance company's treatment of its insured's multi-million dollar claim for damages associated with Hurricane Harvey's destructive force on commercial property. Pending before the Court are six pretrial motions. On March 26, 2021, United States Magistrate Judge Julie K. Hampton issued a Memorandum and Recommendation (M&R, D.E. 261), recommending dispositions for each, involving the dismissal of certain claims and exclusion of certain evidence. Defendant Port Royal by the Sea Condominium Owners Association, Inc. (Port Royal) timely filed objections (D.E. 268) to which Plaintiff Landmark American Insurance Company (Landmark) responded (D.E. 274). Port Royal also filed a request for oral argument on the objections (D.E. 275). The Court **DENIES** the motion for oral argument (D.E. 275). For the reasons set out

below, the Court **ADOPTS IN PART** and **REJECTS IN PART** the analysis and conclusions of the Magistrate Judge.

## JURISDICTION

The Magistrate Judge committed clear error in her recital of the Court's jurisdiction. This is not a habeas case brought by a prisoner in state custody under federal question jurisdiction. That recital is an inadvertent clerical error. This action between two corporate entities, involving state law contractual and extracontractual claims, is before the Court under diversity jurisdiction, 28 U.S.C. § 1332. D.E. 1.

## STANDARD OF REVIEW

**Evidence**. A ruling on a motion to strike evidence is a nondispositive matter within the magistrate judge's discretion. *Bocanegra v. Vicmar Servs., Inc*., 320 F.3d 581, 584 (5th Cir. 2003); *Knight v. Kirby Inland Marine*, 482 F.3d 347, 351 (5th Cir. 2007). "A judge of the [district] court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). The "clearly erroneous" standard requires that the court affirm the decision of the magistrate judge unless "on the entire evidence [the court] is left with a definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co*., 333 U.S. 364, 395 (1948).

**Summary Judgment**. The parties' respective summary judgment motions seek dispositive rulings on claims or defenses. The Court reviews all objections to the recommendations on the motions for summary judgment under the de novo standard of

review.  *E.g.*, *Habets v. Waste Mgmt., Inc*., 363 F.3d 378, 381 (5th Cir. 2004).  To the extent that no objections are made, the Court reviews the recommendations for clear error on the record.  *Guillory v. PPG Indus., Inc*., 434 F.3d 303, 308 (5th Cir. 2005) (citing *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1420 (5th Cir. 1996)).

## DISCUSSION

### I.     Motion to Strike Expert Affidavits (D.E. 208)

#### A.  Lamont, Day, and Spencer Expert Affidavits

Landmark objected to the admissibility of the new affidavits of Defendant's experts, Don Lamont, David Day, and Steven Spencer, on the basis that they are untimely— changing or adding opinions after the expert designation and disclosure deadlines. Landmark also objected that they are sham affidavits that contradicted prior testimony and are conclusory.  After fully considering the experts' opinions, the Magistrate Judge recommended that the motion to strike (D.E. 208) be denied with respect to these three experts.  There is no objection to this recommendation and the Court **ADOPTS** the Magistrate Judge's analysis and conclusions and **DENIES IN PART** the motion to strike (D.E. 208) with respect to the Lamont, Day, and Spencer affidavits.

#### B.  Bruce Smith Expert Affidavit

Landmark moved to strike the new affidavit of Bruce Smith, Port Royal's designated business income loss expert, on the basis that it is untimely with respect to expert disclosure deadlines and is conclusory.  D.E. 208.  In the affidavit, Smith for the first time explains how he would calculate losses attributable to a noncovered event if the

need arose.  He does not offer any opinion that a particular amount was, or should have been, deducted from Port Royal's business loss claim as he previously quantified it.  *See* D.E. 196-1.  Therefore, he does not contradict his earlier opinion that all of the losses he described in his expert report or testified to in his deposition were attributable to Hurricane Harvey as a covered loss.  The apparent purpose of this new testimony is to provide the jury with additional methodology for allocating losses to noncovered causes, should the jury not accept Port Royal's position that 100% of the losses resulted from covered causes and should the jury not understand how to base an allocation on documents accompanying Smith's original opinions.

The Magistrate Judge considers the new information expressed in the affidavit to constitute new opinions not previously disclosed within the deadline for doing so and recommends that this Court grant the motion to strike on this basis.  D.E. 261, p. 24.  Port Royal has objected to this recommendation, arguing that the new affidavit answers questions that remained, but were unasked, after Smith's deposition.  Port Royal faults Landmark's counsel for not asking specific questions about the items Smith had not included in his analysis.  Port Royal's objection does not demonstrate that the Magistrate Judge clearly erred in her analysis of this issue.  Therefore, the Court **OVERRULES** the objection and **ADOPTS** the Magistrate Judge's analysis and conclusions and **GRANTS IN PART** the motion to strike (D.E. 208) with respect to Smith's new affidavit (D.E. 196-1).

### C. Ron Wheaton Affidavit

Landmark moved to strike the affidavit of Ron Wheaton on the basis that it contains expert opinions that were not disclosed within the expert designation deadline and is conclusory. It is undisputed that Port Royal never designated Wheaton as an expert. D.E. 208. He was only identified in its initial disclosures as an individual who investigated the property and may have discoverable information. D.E. 189-11, p. 4. Because he was not designated as an expert, the Magistrate Judge recommends that the motion to strike be granted and that Wheaton be limited to his factual observations, preventing him from testifying as to any expert opinions.

Port Royal objects to this recommendation, complaining that its failure to designate Wheaton as a fact witness with expert knowledge was an inadvertent oversight. It recites that Landmark was aware of Wheaton's role in this case, as he was repeatedly referenced in depositions. Port Royal thus suggests that the Court should relieve it of the Federal Rule of Civil Procedure 26 deadline pursuant to Rule 37(c)(1) because the omission was harmless, particularly given that the trial has been continued such that additional discovery of Wheaton's expert opinions could have been performed. D.E. 268, p. 9.

More to the point, Port Royal faults the Magistrate Judge for not performing a Rule 37(c)(1) harmless omission analysis. *Id*., pp. 9-10. However, nothing in Port Royal's response to the motion to strike requests Rule 37(c)(1) relief or even states that the omission of any expert designation of Wheaton was harmless or substantially justified. D.E. 214. Port Royal did not seek a continuance so that Landmark could conduct additional discovery

in September 2021, when it filed its response nor did it offer to pay any additional expenses that Landmark would incur by allowing the late designation.  Instead, Port Royal raised this issue for the first time eight months later in objecting to the Magistrate Judge's recommendation.  The argument comes too late.  Error must first be preserved in the proceedings before the Magistrate Judge.  *Ingram v. Lumpkin*, No. 19-11322, 2021 WL 4840834, at *1 (5th Cir. Oct. 15, 2021) (citing *U.S. Bank Nat'l Ass'n v. Verizon Commc'ns, Inc.*, 761 F.3d 409, 426 (5th Cir. 2014)).

Last, Port Royal complains that Wheaton should still be permitted to testify to his factual observations.  D.E. 268, p. 10.  The Magistrate Judge's recommendation permits such use of Wheaton's testimony to the extent it does not venture into expert opinions. And Landmark has not objected to this recommendation.  Thus, Port Royal's objection on that basis is moot.

Port Royal's objections are untimely or moot and do not demonstrate that the Magistrate Judge's recommendation is clearly erroneous or contrary to law.  They are thus **OVERRULED** and the Court **ADOPTS** the Magistrate Judge's analysis and conclusions and **GRANTS IN PART** the motion to strike (D.E. 208) with respect to the expert opinions contained in Wheaton's affidavit.  The Court will consider the factual observations of Wheaton.

### II.  Port Royal's Motion for Partial Summary Judgment on Independent Intervening or Superseding Cause (D.E. 143)

Port Royal challenged Landmark's affirmative defenses complaining of intervening or superseding cause on the basis that those defenses do not apply to contract or quasi-

contract claims and, instead, the anti-concurrent cause doctrine applies and is included in the policy.  D.E. 143.  Port Royal also complained that the pleading of the affirmative defenses was factually insufficient under the federal pleading standards.  *Id*.  The Magistrate Judge concluded that the affirmative defenses apply to Port Royal's Deceptive Trade Practices Act (DTPA) and Texas Insurance Code claims (and not to the breach of contract claims regarding the policy) and that the pleading, although cursory, was sufficient under the federal standard.  D.E. 261, p. 34.  Consequently, the Magistrate Judge recommends denying Port Royal's motion.

Port Royal objects that the Magistrate Judge's approach to its DTPA claims is flawed.  According to Port Royal, the analysis requires that the Court look to the nature of the DTPA claim and if it involves only economic damages, then concepts of independent and superseding cause do not apply.  D.E. 268, pp. 11-14.  It further argues that it will be prejudiced by allowing the affirmative defenses to remain because they will mislead or confuse the jury regarding the anti-concurrent cause provision of the contract and Landmark's challenges to the damage claims.  *Id*., pp. 14-15.  Landmark replies that the DTPA's requirement of producing cause renders affirmative defenses of intervening or superseding cause relevant, regardless of whether the DTPA claims are based in tort or contract—disputing the impact of any limitation of damages to economic loss.

Contrary to its argument, Port Royal's authorities support the Magistrate Judge's conclusion that a DTPA claim, even one based on contract, carries its own rules for recovery.  "[A]n allegation of mere breach of contract, without more, does not violate the

DTPA." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc*., 960 S.W.2d 41, 46 (Tex. 1998). "[W]hile the contractual relationship of the parties could create duties under both contract law and tort law, the 'nature of the injury most often determines which duty or duties are breached. When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone.'" *Id*. at 45 (quoting *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986)).

However, in evaluating the nature of the claim, the court must consider the source of the duty to act and the nature of the remedy. *Id*. at 45. When the plaintiff alleges a claim based on an extracontractual duty, even when it claims damages that are only economic losses, it is no longer limited to breach of contract rules and remedies but must apply those that accompany the legal claim. *Id*. at 46-47 (considering a fraud claim). The nature of the claim transforms the same economic losses that ordinarily accompany a breach of contract claim into losses sounding in tort.[1] *Id*. at 47. Nothing in *Formosa Plastics* or Port Royal's cited federal case address the causation standard. *See Hunt Constr. Grp., Inc. v. Cobb Mech. Contractors, Inc*., No. A-17-CV-215-LY, 2018 WL 3132624, at *4 (W.D. Tex. June 26, 2018), *report and recommendation adopted*, No. A-17-CV-00215-LY, 2018 WL 4343429 (W.D. Tex. July 31, 2018).

---

[1] This, of course, would be subject to a double-recovery analysis if a jury were to find in favor of the plaintiff on both a breach of contract and a tort claim for the same economic losses. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 8 (Tex. 1991), *holding modified on other grounds by Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299 (Tex. 2006) (addressing allocation of attorney's fees); *see also* Tex. Bus. & Comm. Code § 17.43 (DTPA remedies are cumulative of other remedies, but do not allow recovery of damages for the same act or practice for which recovery was obtained under another theory).

The DTPA rules and remedies include proof that the act was the producing cause of the damages claimed.  Tex. Bus. & Comm. Code § 17.50.  As the Magistrate Judge correctly observed, intervening and superseding causes are a part of the producing cause analysis.  D.E. 261, p. 33 (quoting *Bartlett v. Schmidt*, 33 S.W.3d 35, 39 (Tex. App.—Corpus Christi–Edinburg 2000, pet. denied)).  Port Royal argues that *Bartlett* is distinguishable because it involved a real estate seller's duties to a buyer as opposed to the insurance relationship at issue here.  But this is a distinction without a difference.  The facts underlying the claim do not change the rules that apply to the claim.

If Port Royal wishes to recover under the DTPA, it must satisfy the requirements of the DTPA, expressly including the statutorily-imposed producing cause standard, which carries with it the risk of a finding of superseding or intervening cause.  The Magistrate Judge's analysis of this question is not clearly erroneous or contrary to law.

While Port Royal suggests that the different rules for its breach of contract and DTPA claims may cause prejudice by misleading or confusing the jury, its remedy is not to defy the rules of the claims.  Rather, it must (a) choose which claim(s) to submit to the jury or (b) fashion appropriate questions and instructions to avoid any confusion or misapplication of the competing causation standards.  Port Royal has not offered any authority that permits altering the legal parameters of a claim for the sole purpose of accommodating a plaintiff's submission of additional, potentially conflicting, claims.

Instead, "[s]ubmitting potentially conflicting issues to a jury on alternative theories of recovery is not error because, until those issues are answered, no conflict can exist."

*Cunningham v. Healthco, Inc*., 824 F.2d 1448, 1465 (5th Cir. 1987) (applying a plain error standard of review and citing *Butler v. Joseph's Wine Shop, Inc*., 633 S.W.2d 926, 933 (Tex. App.—Houston 1982, writ ref'd n.r.e.) for the proposition that any conflict is resolved when entering judgment on the verdict). Consequently, Port Royal has not demonstrated that the Magistrate Judge's analysis is clearly erroneous or contrary to law.

The Court **OVERRULES** Port Royal's objections. Port Royal did not object to the Magistrate Judge's disposition of its complaint regarding the sufficiency of Landmark's pleading of these affirmative defenses. Therefore, the Court **ADOPTS** the Magistrate Judge's analysis and conclusions, and **DENIES** the partial motion for summary judgment on Landmark's intervening and superseding cause affirmative defenses (D.E. 143).

### III.  Landmark's Motion for Summary Judgment on Failure to Allocate Causation and Damages (D.E. 146)

The Magistrate Judge recommends denying Landmark's motion, seeking summary judgment on Port Royal's failure to allocate causation and damages and dismissal of the extracontractual claims as a result. She reasons that Port Royal's position[2] that 100% of its claimed damages were caused by a covered peril is, in fact, an allocation (because it left out damages that it concedes are not covered) and its position is defensible under the evidence submitted, creating a disputed issue of material fact for the jury. D.E. 261, pp. 34-46.

---

[2]  A clerical error recites that it was Landmark's argument that 100% of the claimed loss was caused by Hurricane Harvey. D.E. 261, p. 45. The sentence should read that it was Port Royal's argument.

Neither party objected to the Magistrate Judge's analysis or conclusions in this regard.   Therefore, the Court **ADOPTS** them and **DENIES** the motion for summary judgment on failure to allocate (D.E. 146).

IV.     **Landmark's Motion for Summary Judgment on Building 2 Claims for Ordinance or Law and Replacement Cost Coverages (D.E. 147)**

Landmark seeks summary judgment that Port Royal's delay in repairing Building 2 has eliminated its claims under the Ordinance or Law coverage (requiring repair within two years) and Replacement Cost coverage (requiring repair as soon as reasonably possible).   The Magistrate Judge recommends granting the motion.   In so doing, she rejected Port Royal's complaint that Landmark breached the contract first, Landmark is estopped by its multiple misrepresentations, and both Landmark's breach and the reasonableness of Port Royal's repair efforts are disputed issues of material fact for the jury.   She accepted Landmark's reply that waiver and estoppel theories cannot expand insurance coverage and that the prevention doctrine implied in Port Royal's response is not applicable in Texas.

Port Royal objects, noting that:

1.   Landmark filed this action on January 7, 2019, less than two years after Hurricane Harvey's destruction on August 25, 2017 (before the expiration of any two-year base period for completing repairs);

2.   Landmark's combined coverage for Buildings 2, 3, and 6 and personal property is $28,739,157, whereas Landmark has paid only $4,180,298.61 on those claims; and

3.  Landmark still has not paid the $1,307,541.60 recoverable depreciation monies on Buildings 3 and 6, which repairs have already been made and owed for almost three years and which amount was determined by Landmark's own expert.

D.E. 268, pp. 15-16.  Embracing the doctrine of prevention, Port Royal cites this Court's decision in *Kabir Marina Grand Hotel, Ltd. v. Landmark Am. Ins. Co*., No. 2:18-CV-00237 (S.D. Tex. January 18, 2022) (D.E. 74).[3]  This Court has previously distinguished Landmark's cited authorities and the *Kabir* analysis applies here.

The Landmark Ordinance or Law coverage endorsement issued to Port Royal addresses Increased Cost of Construction benefits to pay for construction upgrades that are required for current building code compliance.  The provision states that Landmark will not pay for code upgrades "Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years."  While Port Royal concedes that it has not yet made the purchases or repairs, it claims that it had no choice in the matter because of Landmark's refusal to timely pay all other policy benefits on which its ability to make any such repairs is financially dependent.  It argues that Landmark is estopped from relying on the limitations period under these circumstances.

Landmark's response is that Texas law does not allow the imposition of equitable remedies to expand the scope or duration of coverage.  But the question here is not whether

---

[3]  The Magistrate Judge did not consider this opinion in her analysis.  The Court notes that the *Kabir* opinion at issue does not appear in the Westlaw database and it is not a published opinion.  Landmark, a party to that case, failed to disclose it to the Magistrate Judge.

equitable remedies expand the scope or duration of coverage.  It is undisputed that coverage of code-compliant construction upgrades was included in the policy.  The question is whether Port Royal forfeited the coverage for which it paid its premium by failing to timely complete the repairs, or whether Landmark should be permitted to stand on the contractual limitations period when it has—in practical terms—effectively prevented the insured from complying with it.

As presented, nothing before the Court suggests that Port Royal's claim seeks coverage for a risk that is not covered or a time period for which it did not pay a premium. Therefore, the issue does not implicate the ruling of *Ulico Casualty Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 775 (Tex. 2008), which prohibits rewriting the contract to provide coverage for risks not insured. *Id.* (refusing to apply waiver and estoppel to permit the insured to obtain coverage for a claim first made against the insured after the expiration of the contractual claims-made policy period).

The Supreme Court of Texas encapsulated the *Ulico* holding in a manner that clearly delineates how it does not defeat Port Royal's claim:  "We hold that ***if an insurer's actions prejudice its insured, the insurer may be estopped from denying benefits that would be payable under its policy as if the risk had been covered***, but the doctrines of waiver and estoppel cannot be used to ***re-write*** the contract of insurance and provide contractual coverage for risks not insured." *Id.* (emphasis added).  *Ulico* repeated this dichotomy when recognizing the well-established rule that "the doctrines of waiver and estoppel may

operate to avoid conditions that would cause a forfeiture of an insurance policy . . . ." *Id.* at 781.

Neither does Port Royal's claim run afoul of the holding in *Devonshire Real Estate & Asset Management, LP v. American Insurance Co*., No. 3:12-CV-2199-B, 2014 WL 4796967 (N.D. Tex. Sep. 26, 2014). That case states that "no Texas court has employed the doctrine of prevention to vitiate an insured's contractual obligation to repair or replace damaged property before claiming payment for replacement costs." *Id*. at *7. The corollary to that holding, also stated in the opinion is: "when a promisor wrongfully prevents a condition from occurring that condition is excused." *Id*. (citing *Mendoza v. COMSAT Corp*., 201 F.3d 626, 631 (5th Cir. 2000)).

The *Devonshire* opinion highlights that there are two timing issues that should not be conflated. First, if a repair is required to be performed before the claim for that repair amount is payable, that requirement stands as written. Second, if coverage would be forfeited by not making the repair or claim within the contractual time for doing so and the insurance company has caused a delay past that contractual deadline, the insurance company cannot stand on the deadline and remains liable for the claim once its interference is eliminated. *Id*. (collecting cases illustrating that strict compliance with the policy timing requirements is not required where the insurance company completely denies the claim, preventing repairs).

Landmark's citation of *Dickler v. CIGNA Property & Casualty Co*., 957 F.2d 1088, 1096 (3d Cir. 1992), is not applicable. While the court refused to relieve a real estate group

of its duty to rebuild a burned down school before claiming replacement costs from the insurer, its overall holding comports with Port Royal's argument.  As the opinion details, Cigna denied Dickler's claim, thereby preventing Dickler from rebuilding.  As a consequence, the property was condemned and demolished.  Because the delay and condemnation were Cigna's fault for wrongfully denying the claim, the court ordered that it pay the building's actual cash value within thirty days of judgment.  The court extended the expired one-year time period in which to rebuild for one year after the actual cash value was paid, after which Dickler could claim—and Cigna would have to pay—the replacement costs incorporated into the newly built structure.  Plus Cigna had to reimburse Dickler for the demolition costs.

Nothing in the *Dickler* case supports summary judgment denying Port Royal any ability to recover code-compliance costs—once the issue of regular repair costs is resolved. At that point, if regular repair monies are owed and relief is appropriate, the repair deadline can be calculated from the date of payment of those policy benefits.  Port Royal would then have an opportunity to perform the repairs and claim the additional policy benefits if that is done before the newly-triggered two-year or "reasonable time" deadlines expire.

Landmark responds that the analysis from *Kabir* does not apply because in *Kabir*, the insurance company had not paid any monies on the claim whereas Landmark and the Texas Windstorm Insurance Agency (TWIA) have paid significant sums to Port Royal for rebuilding.  Indeed, the M&R notes that

> Landmark paid Port Royal $1,616,356.76 for repairs to Building 2.  (D.E. 145-14 at 18).  TWIA paid Port Royal

$4,033,000 for repairs to Building 2, which was the limit of TWIA's policy. (D.E. 145-50 at 2). However, Port Royal's estimates put the actual cost value of repairs to Building 2 at over $11,000,000. (See D.E. 154-4).

D.E. 261, p. 49. The Magistrate Judge also noted that this dispute is between sophisticated commercial parties and there is no evidence that Building 2 is incapable of repair at this point, distinguishing *Devonshire*. *Id*. at 54.

There is also some evidence that repairs were delayed by Port Royal's decision to phase its rebuilding efforts, deferring Building 2 to phase six. And there is other evidence that Landmark delayed payments because of its adjuster's failure to respond to inquiries regarding the sequencing of repairs which could have increased the repair costs in the interest of temporary improvements and because of its adjuster's misunderstanding regarding whether Landmark's coverage was primary or excess of TWIA's. Given the competing evidence in this case, Port Royal argues that its entitlement to recover under both the Ordinance or Law coverage and Replacement Cost coverage presents disputed issues of material fact.

Landmark characterizes Port Royal's delay of repairs to Building 2 purely as a choice. And there appears to be some dispute regarding whether and how payments for, and repairs to, Buildings 3 and 6 impacted the repair of Building 2. Landmark also complains that repairs have to be completed before they can be quantified under this coverage. However, this is a matter that can be accommodated by an appropriate remedy.

In sum, estoppel can prevent a forfeiture of Port Royal's right to the additional replacement costs required by code compliance. Landmark complains that cases applying

the prevention doctrine tend to involve claims that were denied in whole (not, as here, paid in part).  But it has not advanced any cases that hold that some payment, however insufficient, is enough to bar the use of the prevention doctrine and this Court declines to adopt such a bright-line rule, particularly where the matter was not fully briefed before the Magistrate Judge.  The burden to show that it is entitled to judgment as a matter of law is on Landmark as movant.

Whether Port Royal was effectively prevented from accomplishing the repairs necessary to claim Ordinance or Law or Replacement Cost benefits by Landmark's actions is a question of fact.  The parties have submitted sufficient evidence to raise a disputed issue for the jury, preventing summary judgment.  The Court finds that the Magistrate Judge's analysis is contrary to law because legal precedent was misapplied and the Magistrate Judge clearly erred in failing to acknowledge the disputed fact issues.  Consequently, the Court **REJECTS** the Magistrate Judge's analysis and conclusions and **DENIES** Landmark's motion for summary judgment on Port Royal's claim to benefits under the Ordinance or Law coverage and Replacement Cost coverage for Building 2 (D.E. 147).

### V.    Landmark's Motion for Summary Judgment on Business Income (and Extra Expense) Claims (D.E. 148)

According to the Magistrate Judge, Port Royal made a timely claim for benefits under the Business Income (and Extra Expense) provisions of the policy and pled a claim for those benefits in this lawsuit.  D.E. 261, pp. 61-62.  Additionally, Port Royal submitted sufficient evidence to raise a disputed issue of material fact as to the period of restoration

that governs business income claims and includes allowances for the insurance company's delay. *Id.*, p. 62. Landmark further acknowledges that it has not refuted the claim and has paid over $5 million on it. *See* D.E. 261, p. 64 (citing D.E. 149, p. 16). There is no objection to this analysis and that portion of the Magistrate Judge's recommendation is **ADOPTED**. However, the Magistrate Judge's additional recommendations on this motion are subject to objection.

**Measure**. The Magistrate Judge found that a number of fact issues could impact the business income loss claim, including those affecting the period of restoration and the causation of the losses (such as general unfavorable business conditions or poor workmanship of repairs). Port Royal argues, for the first time in its objections, that the policy terms for measuring business loss do not provide for any such exclusions. More specifically, Port Royal points out that Landmark's motion did not provide any authority for applying concepts of allocation to business income claims or any evidence supporting its causal challenges, arguing that no presumptions in that regard should be indulged— legally or factually.

Port Royal points out that the language of the provision that applies to Business Income (and Extra Expense) coverage states, "Loss under this extension will be adjusted based on the 'owner participant' average rental income over the 12 months period prior to the loss." D.E. 268, pp. 19-25 (referring to D.E. 145-1, p. 13). Because that provision does not address any other issues, such as unit availability or workmanship of repairs, Port Royal argues that the Magistrate Judge's concerns with Bruce Smith's opinion are misplaced or

irrelevant.  Because this argument was not timely briefed before the Magistrate Judge, it is waived for summary judgment purposes.  *Ingram*, 2021 WL 4840834, at *1.

**Allocation**.  Port Royal further objects to the Magistrate Judge's conclusion that it did not present evidence to raise a disputed issue of material fact with respect to whether all of the claimed business income loss was attributable to a covered peril.  Specifically, the Magistrate Judge found that Port Royal's only witness on the issue, Bruce Smith, did not claim that the entirety of the business losses he described resulted from the covered peril:  Hurricane Harvey.  D.E. 261, p. 62.  Moreover, his additional affidavit attempting to explain how noncovered losses could be quantified was insufficient to establish any amounts and, regardless, has been stricken in this Order, above.

Instead, the Magistrate Judge emphasized that there are questions regarding general business conditions and the poor workmanship of repairs that could impact the claim.  *Id*. Because Smith has not ruled out these factors, the Magistrate Judge found his opinion to be speculative and unreliable.  *Id*.  She thus recommends granting Landmark's motion (D.E. 148).

Port Royal objects to the Magistrate Judge's apparent crediting of Landmark's expert's testimony as opposed to Port Royal's expert's testimony on the issue of whether there were, in fact, issues of general business conditions and poor workmanship that impacted the business income loss claim.  Port Royal observes that the court is not to weigh evidence, assess credibility, or decide questions of fact in summary judgment proceedings.

*See* D.E. 268, p. 22.  The Court agrees and **SUSTAINS** the objection.  *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).

Port Royal objects to the Magistrate Judge's factual conclusion that Smith failed to allocate damages, including only those resulting from Hurricane Harvey.  Port Royal points out that Smith did testify in his deposition that his opinion included only losses caused by Hurricane Harvey, meaning an allocation of 100%—a matter not addressed in the M&R. D.E. 268, p. 20; *e.g.*, D.E. 145-40, pp. 49, 59-60.  The Court notes that Smith's deposition testimony is further supported by other documents that, according to Port Royal, could provide a basis for the jury to perform an allocation analysis if it were inclined to do so. Therefore, the conclusion that Smith's testimony provided no evidence of allocation constitutes clear error and the Court **REJECTS** that portion of the M&R.

Because the Court finds that Smith did provide an opinion regarding allocation on the basis of cause, the Court **OVERRULES AS MOOT** Port Royal's additional objection that allocation does not apply to business income and extra expense claims.  *See* D.E. 268, p. 20.

**Formulae and Time Periods**.  Landmark alternately sought summary judgment on the basis that Smith's opinion is not tied to the period of restoration.  D.E. 148, p. 7.  The Magistrate Judge did not address that argument, having already recommended that Smith's opinion be excluded for failure to allocate.  No party has objected to the Magistrate Judge's omission of a recommendation on this issue.  Consequently, the Court declines to address it.

**Limits on Declaration Page**. Port Royal objects that the Magistrate Judge misunderstood the import of the declarations page recitation regarding "The most Landmark would pay for business income loss and extra expense was the lesser of: "(1) The amount of loss sustained and expenses incurred during the 120 days immediately following the beginning of the 'period of restoration'; or (2) The Limit of Insurance shown in the Declarations." D.E. 268, p. 24 (citing D.E. 261, p. 59). Because Landmark made no argument related to this provision in its motion, the Court **SUSTAINS** Port Royal's objection.

In sum, the Court **OVERRULES** as waived Port Royal's objection based on the measurement of damages, **SUSTAINS** the objection that the Magistrate Judge clearly erred in failing to find that Smith, as a matter of fact, allocated 100% of the damages he testified about to the covered peril of Hurricane Harvey, **OVERRULES AS MOOT** the objection that allocation does not apply to business income loss claims, and **SUSTAINS** the objection to the reference to limits provided in the declarations page as outside the parameters of the motion. The Court consequently **DENIES** Landmark's motion for summary judgment on business income loss (D.E. 148) because it is subject to disputed issues of material fact.

## VI.   Landmark's Motion for Summary Judgment on Extracontractual Claims (D.E. 149)

Landmark contends that it is not liable for any extracontractual claims because it acknowledged Port Royal's claim and timely paid sufficient benefits under the policy. More specifically:

- Landmark seeks summary judgment on Port Royal's counterclaim for breach of the common law duty of good faith and fair dealing because the evidence is legally insufficient;

- It seeks summary judgment on the Chapter 541 unfair claim settlement provisions because the claim is not adequately pled, Port Royal cannot show any unfair or deceptive act, and Landmark has timely paid all allowable damages;

- It seeks summary judgment that Port Royal cannot recover under the DTPA because it cannot show reliance to its detriment and the claim is not supported by legally sufficient evidence;

- Landmark cannot be held liable under the Prompt Payment of Claims Act because it timely acknowledged Port Royal's claim and promptly investigated it; and

- Port Royal, as a corporate entity, cannot recover mental anguish damages.

D.E. 261, pp. 64-65.  In other words, this action is nothing more than a bona fide coverage dispute and Landmark has demonstrated the reasonableness of its position.

Port Royal conceded that it cannot receive mental anguish damages and no objection to dismissal of that claim has been made.  The Court therefore **ADOPTS** the M&R and **GRANTS IN PART** the motion for summary judgment (D.E. 149), dismissing any claims for mental anguish damages.  The remaining issues are addressed below.

Addressing the first three claims together under the same standards, the Magistrate Judge determined that Port Royal had failed to show a genuine issue of material fact, finding that Landmark's adjuster promptly and appropriately investigated the claim in tandem with TWIA and its engineering experts.  D.E. 261, pp. 71-72.   In so doing, she took as true Landmark's evidence, which she characterized as establishing (1) a bona fide coverage dispute regarding preexisting damage and (2) the amount actually covered by the policy provisions.

Port Royal objects, unsystematically recounting its summary judgment evidence. Consequently, Landmark contends that Port Royal failed to object to any specific findings of fact, simply rehashed its prior arguments, and argued new issues not raised before the Magistrate Judge.  D.E. 274, p. 27.  According to Landmark, the objections are insufficient, waived, and do not trigger this Court's substantive review.

While the Court agrees with Landmark that Port Royal's challenge could have been better organized and targeted to the issues in the summary judgment motion, the Court finds that Port Royal's objection raises the issue of the standard of review, which this Court must consider even in the absence of an objection.  The district court must satisfy itself that there is no clear error on the face of the record.  *Guillory*, 434 F.3d at 308 (citing *Douglass*, 79 F.3d at 1420).

In reviewing a summary judgment motion, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *Salazar-Limon v. City of Houston*, 826 F.3d 272, 274-75 (5th Cir. 2016).  In that regard,

the Court notes the following with respect to the Magistrate Judge's relevant findings, paraphrased.

> 1.  The Magistrate Judge found:  Landmark appropriately utilized TWIA's experts at the beginning of its investigation and hired additional experts when TWIA completed its adjustment of the claim to resolve differences between TWIA's and Port Royal's estimates.

This effectively rejects Port Royal's evidence that David Alvarez was not actively adjusting the claim until more than nine months after the loss and accepts Landmark's evidence to the contrary as true.  This is an improper summary judgment analysis because the following evidence creates disputed issues of material fact:

- Alvarez spent months merely waiting for TWIA to complete its adjusting and pay the claim out of the unreasonable belief that the Landmark policy was an excess policy and TWIA's policy benefits would extinguish the claim.  *See* D.E. 189-3, 189-6, 189-19.

- Alvarez did not see the TWIA policy so that he could evaluate any differences in TWIA's approach, policy limits, or terms until more than nine months after the loss.  D.E. 189-19.

- TWIA's experts were not actually sharing their work product with Landmark's adjuster during their investigation and Landmark did not know that TWIA's investigation extended to different improvements on the property from those covered by Landmark's policy.  *See* D.E. 189-2, pp. 6-7, 15; D.E. 189-3; D.E. 189-19.

- Alvarez misrepresented to his Landmark contact, Joe Buffo, that he had already retained TWIA's experts in March 2018, when he had not been able to do so at that time.  D.E. 189-4, 189-5.

- Alvarez did not seek to staff Landmark's investigation with the experts it needed until June 15, 2018—over ten months after the loss, after TWIA managed to complete its investigation and pay its policy benefits.  D.E. 189-1, 189-13.

The Court finds clear error with regard to the standard of review applied.  The conclusions in the M&R were prevented by disputed issues of material fact.

2. The Magistrate Judge found:  Alvarez explained why Landmark rejected Port Royal's proof of loss and explained the additional information Landmark needed.

This finding does not eliminate claims of misrepresentations with respect to coverage.  Port Royal has taken the position that Landmark's explanation contained obvious errors regarding, for instance, the business income loss coverage.  Port Royal submitted evidence that Landmark represented that business income loss coverage applied only to Buildings 2, 3, and 6 when it covered the entire property.  D.E. 189-7, pp. 8-9.  This finding further overlooks Port Royal's complaint that Landmark left the claim in limbo by filing this lawsuit without expressly accepting or rejecting the entirety of the claim.

The Court finds that the Magistrate Judge clearly erred in making a definitive finding of fact on disputed evidence.

3. The Magistrate Judge found:  The summary judgment evidence shows a bona fide dispute regarding the amount of preexisting damage at the

property and how much of the claimed loss is actually covered under the policy.

In making this finding, the Magistrate Judge did not conduct a review of the evidence to eliminate Port Royal's claims that Landmark's investigation was intentionally insufficient or outcome-oriented.  And the finding disregards the evidence noted for the first two findings of fact, discussed above.  Nothing in the M&R explains Landmark's allegedly excessive delay in paying any amount and its specific conclusions limiting its payments to a small fraction of policy limits.  Instead, it impliedly accepts as true Landmark's competing evidence, contrary to the summary judgment standard of review.

The Court finds that the Magistrate Judge clearly erred with regard to the summary judgment standard of review.  The findings are insufficient to eliminate all of Port Royal's extracontractual claims.  The Court therefore **REJECTS IN PART** the analysis on the extracontractual claims for breach of the duty of good faith and fair dealing, violations of the DTPA, and Chapter 541 unfair claim settlement practices and **DENIES IN PART** the motion (D.E. 149) on those claims.

> 4.  The Magistrate Judge found:  Landmark did not violate the Prompt Payment Act because:  (a) Landmark timely acknowledged receipt of the claim; (b) Landmark timely commenced its investigation; (c) Landmark appropriately worked with TWIA during the latter's investigation and used its consultants and adjusters' work product; and (d) Landmark timely rejected Port Royal's proof of loss with its reasons.

Because the Magistrate Judge's findings and the parties' respective arguments regarding the Prompt Payment Act claims appear to be at cross-purposes, the Court first consults Port Royal's pleading to determine the precise nature of its claim.  According to

26 / 30

the relevant parts of its counterclaim (D.E. 120), Port Royal has complained that Landmark has not fully denied its claims but, instead, filed suit and ceased to make payments that are required under the policy.  ¶¶ 32, 36, 49.  Landmark's investigation was a sham when initiated, which is insufficient to satisfy the Prompt Payment Act's requirement of an actual investigation by the deadline triggered by receipt of the claim.  ¶ 52.  And Landmark has unreasonably denied or delayed payments still owed in violation of the Prompt Payment Act.  ¶¶ 40, 74, 77.

In its summary judgment motion (D.E. 149), Landmark does not address the allegation, much less the evidence, that its investigation was insufficient because it was not a bona fide effort to adjust the claim.  As found above, there is a disputed issue of material fact whether the investigation was really a wait-and-see delay tactic, with Landmark effectively using TWIA's investigation as a proxy instead of performing its own duties.  And Landmark does not address the allegation that its failure to promptly pay the entirety of the claim leaves it at risk under the Prompt Payment Act if, after trial, it is determined that it failed to pay all sums owed under the policy.

Port Royal responded to the motion, arguing that Landmark had an independent duty to investigate that it failed to perform because of its improper and blind deference to the TWIA investigation (on which there is a disputed issue of material fact).  D.E. 198, p. 2.  Port Royal pointed out an admission by Landmark contrary to its own motion that "Landmark never denied the claim nor failed to timely affirm or deny coverage or accept or reject coverage."  D.E. 198, p. 24 (quoting D.E. 149 at 15).  In other words, Landmark

left the claim in limbo while it filed this lawsuit.  And, Port Royal argued, a partial payment is not a prompt payment that will extinguish all claims under the act for delay in full payment.  *Id.*, pp. 4, 25.  Indeed, the Magistrate Judge agreed that there remains a disputed issue of material fact as to how much of Port Royal's claim is covered under the Landmark policy.

Genuine disputes of material fact, especially regarding the crux of Port Royal's claims, preclude entry of summary judgment at this stage.  Thus summary judgment on the Prompt Payment of Claims Act is improper and would be premature under the circumstances where the payable amount under the policy remains in dispute.

Port Royal objected to the M&R because its claim is, in part, that the act is not satisfied by a partial payment if the evidence demonstrates that more "must be paid" under the policy.  D.E. 268, p. 35.  Neither Landmark nor the M&R addressed that argument.  It also objected because of its evidence that Alvarez did not truly work with the TWIA investigators or timely hire TWIA's experts.  Rather, he used that investigation to delay his own.  D.E. 268, pp. 44-45, 50.  And there is a disputed fact issue in that regard.

Consequently, the Court **SUSTAINS** the objections, **REJECTS IN PART** the M&R's analysis, and **DENIES IN PART** the motion for summary judgment on Port Royal's extracontractual claims under the Prompt Payment Act.

## CONCLUSION

Having reviewed the findings of fact, conclusions of law, and recommendations set forth in the Magistrate Judge's Memorandum and Recommendation, as well as Port

Royal's objections, and all other relevant documents in the record, and having made a de novo disposition of the portions of the Magistrate Judge's Memorandum and Recommendation to which objections were specifically directed, the Court

- **CORRECTS** the statement of jurisdiction to reflect that the Court is sitting in diversity;

- **ADOPTS** the Magistrate Judge's recommendation and the Court **GRANTS IN PART** Landmark's motion to strike (D.E. 208).  The new affidavit of Smith and all expert opinions of Wheaton are **STRICKEN**. The motion is **DENIED IN PART** in all other respects.

- **ADOPTS** the Magistrate Judge's recommendation and **DENIES** Port Royal's partial motion for summary judgment on Landmark's intervening and superseding cause affirmative defenses (D.E. 143);

- **ADOPTS** the Magistrate Judge's recommendation and **DENIES** Landmark's motion for summary judgment on failure to allocate (D.E. 146);

- **REJECTS** the Magistrate Judge's analysis and conclusions and **DENIES** Landmark's motion for summary judgment on Port Royal's claim to benefits under the Ordinance or Law coverage and Replacement Cost coverage for Building 2 (D.E. 147);

- **REJECTS** the Magistrate Judge's recommendation and **DENIES** Landmark's motion for summary judgment on business income loss (D.E. 148)

- **ADOPTS** the Magistrate Judge's recommendation with respect to Port Royal's claim to mental anguish damages.  The motion for summary judgment on extracontractual claims (D.E. 149) is **GRANTED IN PART** and the Court **DISMISSES** that claim.  The Court **REJECTS** the Magistrate Judge's analysis regarding the balance of the motion and **DENIES IN PART** Landmark's motion for summary judgment on all extracontractual claims other than the claim for mental anguish damages (D.E. 149).

ORDERED on August 5, 2022.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE